UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN R. MILLER,<br><br>    Plaintiff,<br><br>v.<br><br>ALBERT NAJERA, *et al.*,<br><br>    Defendants. | Case No. 1:19-cv-01077-AWI-BAM (PC)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM FOR RELIEF<br><br>(ECF No. 4)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Steven R. Miller is a federal prisoner currently proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983 and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Plaintiff initiated this action by filing his original complaint on August 5, 2019. (ECF No. 1.) Before Plaintiff's original complaint was screened, Plaintiff filed a first amended complaint on August 26, 2019. (ECF No. 4.)

Therefore, currently before the Court for screening is Plaintiff's first amended complaint, filed on August 26, 2019. (ECF No. 4.)

**I.**     <u>**Screening Requirement and Standard**</u>

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

1

"frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II. Summary of Plaintiff's First Amended Complaint

Plaintiff is currently housed at Federal Correctional Institution, Terminal Island in San Pedro, California. Plaintiff alleges that the events at issue in his first amended complaint took place while he was a federal pretrial detainee housed at the Fresno County Jail. Plaintiff names the following Defendants: (1) Retired U.S. Marshal Albert Najera; (2) Interim U.S. Marshal June 15-October 25, 2010; (3) U.S. Deputy Marshal Does 1-2; (4) Fresno County; (5) Fresno County Department of Public Health; (6) Fresno County Department of Public Health Director Edward Moreno, M.D.; (7) Fresno County Department of Public Health, Division of Correctional Health Manager George Laird, PhD; (8) Fresno County Department of Public Health, Division of

Correctional Health Medical Director Pratap Narayen, M.D.; (9) Fresno County Jail Pill-Cart Does 1-6; (10) Fresno County Jail Medical Does 1-2; (11) Fresno County Jail; (12) Fresno County Sheriff Mims; (13) Retired Fresno County Captain of Detention Rick Hill; (14) Fresno County Jail Classification Officer(s); (15) Fresno County Jail Classification Officer Meza; (16) Fresno County Jail "Floor Sergeant" Doe; (17) Officer Guiterrez; and (18) Fresno County Jail Does 1-20.

Plaintiff alleges as follows: On June 15, 2010, Plaintiff was arrested and delivered to the Fresno County Jail for federal arraignment. Plaintiff states that, at that time, he was 19 years of age, 5' 9.5", and 130 pounds. He was visibly young, gay, frail, and studious. Plaintiff was a first-time offender and had experienced verbal, mental, physical, and sexual abuse throughout his life. In response to questions asked by a female intake officer at the Fresno County Jail, Plaintiff detailed his mental health and sexual assault history. Plaintiff then stated in holding for about 5 hours. During that time, Plaintiff's requests for his free call were repeatedly denied, up to four officers made rude and homophobic remarks, and, when Plaintiff received his laundry, two officers made rude and homophobic remarks and bet how long it would be until Plaintiff would be raped.

Plaintiff was assigned to an empty 3-man cell at MJ6E-2, which was nearly the furthest from the guard office. Upon entry, Plaintiff was immediately assailed by Jeffrey Brohn, which triggered Plaintiff's PTSD. Brohn, who was at the Fresno County Jail on federal charges for attacking Plaintiff when Plaintiff was 15, followed and blocked Plaintiff's escape from the cell. Brohn then threateningly recited Plaintiff's grandparents' address. Plaintiff spent the night in terror because, after Brohn had been released from California custody, Brohn had stalked Plaintiff.

On June 16, 2020, while Plaintiff was on his way to court, he told Doe 6 about everything that Brohn had done to him. However, Plaintiff was simply told to just tell his lawyer. Plaintiff then informed the male and female Deputy Marshal Does that drove him to court about everything related to Brohn. The Deputy Marshal Does also told Plaintiff to tell his lawyer and further stated that they would look into it.

When Plaintiff returned to Fresno County Jail, he informed Doe 7 and was sent to MJ6E. When Brohn tried to cozy up to Plaintiff, Plaintiff told Brohn to leave him alone, that "they" know about you, and that Brohn was not supposed to talk to Plaintiff. Plaintiff was called out and placed in what might have been the chapel for 2 hours before Officer Guiterrez found him. Plaintiff explained the situation with Brohn, Officer Guiterrez investigated, and approximately 30 minutes later, Plaintiff returned to MJ6E. Soon, Plaintiff realized that Brohn was in the adjacent Pod F. However, when Plaintiff complained, Doe 8 told Plaintiff to "get used to it." Brohn continued to harass and watch Plaintiff, even sending messages to Plaintiff via inmates through the adjoining door.

In mid- to late July 2010, after Brohn left, Eliasar Diaz, a large 40-year-old state prisoner housed at the Fresno County Jail due to a "writ," was assigned to the cell hidden behind the lower showers. Diaz quickly pursued Plaintiff, forcing Plaintiff to give him magazines and books. When other people were at yard or were busy in the common area, Diaz came into Plaintiff's cell and molested him, eventually raping and sodomizing him. One time, Miller was dragged into Diaz's cell. These events continued for about 10 weeks and resulted in Plaintiff having severe rectal tearing, pain, and bleeding.

Plaintiff requested to be housed with Miguel Ramirez, but Plaintiff's request was ignored or denied. Around that time, Ramirez and David Zastrow complained to the "Floor Sergeant" about their fears that Diaz was going after Plaintiff and other youth. The Sergeant said that nothing could be done until something happened. In mid-September, Plaintiff was reassigned to MJ6E. Around October 12, 2010, Zastrow and Ramirez convinced Plaintiff to report Diaz on a white Inmate Request Form ("Kite"), which was given to Officer Guiterrez. Officer Guiterrez pulled Plaintiff, who explained everything to the officer. Officer Guiterrez stated that she knew who Plaintiff was talking about, showed Plaintiff a mugshot to confirm, and declared that "I" or "We" were afraid of something like this happening. Plaintiff waited in the chapel and was questioned by the "Acting Warden." Then, Does 9-10 took Plaintiff to a holding cell in medical and, after 4 hours, Plaintiff was transferred to Fresno Community Regional Medical Center. At the hospital, a rape kit was formed, Plaintiff was tested for sexually transmitted diseases, and

preventative/post-exposure medication was administered. Plaintiff was interviewed by a black male Fresno Detective and requested that charges be pressed against Diaz. Nurses at the hospital told Does 9-10 that follow-up care would be needed, but no such care was ever provided, even after Plaintiff sent multiple green and white kites about such care. Plaintiff was also not informed about the results of the sexually transmitted disease tested, even though the law requires it.

Upon his return to the Fresno County Jail, Plaintiff spoke to a social worker for about an hour and was reassigned to Solitary MJ4. In the morning, Captain Rick Hill, who had been the previous night's "Acting Warden," told Plaintiff that he would have a cellmate in a few days. However, Plaintiff did not receive a cellmate. Additionally, even though Plaintiff submitted multiple kites, Plaintiff was unable to speak with a rape victim advocate. The kites were viewed and processed by Does 11-15. When Plaintiff asked the Pill-Cart Does 1-3 about the kites, they simply told him to place another. Plaintiff was prescribed Effexor for his general anxiety, depression, and PTSD.

In early November 2010, Does 14-15 took Plaintiff to a Classification Doe, who may have been Meza, and then to SAJ-4, known as "Gay Pod," which was located far away from staff and next to a drafty stairwell door. The officers all basically said that they did not want to hear about "any more love affairs" or Plaintiff would go back to solitary, which frightened Plaintiff because he was certain that he would have hurt himself and suicide watch scared him even more. Plaintiff recalls that SAJ-4 had one gay Latino inmate, one gay White inmate, and one Latina transgender inmate called Weda, who Plaintiff had met briefly in May. The Latino inmate soon entered Plaintiff's shower and forced Plaintiff to have sex. The Latino inmate often had sex with the White inmate, who was HIV-positive. Within a few weeks, an ex-Bulldog inmate, Sanchez, hit Plaintiff in the face. Plaintiff was pulled, questioned, and told to identify Sanchez in front of other inmates. Plaintiff was then taken to medical and given aspirin and ice for his obvious contusion. When Plaintiff told Medical Doe 2 about his rectal pain and bleeding, Doe 2 stated that it did not matter because the blood was not black.

During Thanksgiving week of November 2010, temperatures plummeted to 22 degrees Fahrenheit. Inmates lobbied for jackets, extra blankets, and to have the drafty door covered.

| | |
|---|---|
| 1 | During Plaintiff's stay in SAJ-4, the hot water in the showers was intermittent and often brief and, |
| 2 | thus, some inmates showered together due to the inhumane conditions. |

In late-November or early-December 2010, an inmate, who was a meth addict and who was friends with the Latino inmate and Weda, sodomized Plaintiff in the open. Within 2 weeks, Plaintiff had tell-tale signs of sero-conversion: high, freezing fever, nausea, extreme vertigo, and low appetite worse than Plaintiff had ever had. The "others" stated that they should have stopped the meth addict inmate from sodomizing Plaintiff because the inmate's boyfriend and girlfriend both had HIV. Plaintiff repeatedly wrote green kites to be seen by Medical staff for his symptoms and for the rectal bleeding that allowed him to become infected. "Does 16-20 picked-up, looked at, and wrote on, thus initially processed, these kites frequently before FCJ Pill-Cart Does 4-6 came and he repeatedly asked about his requests; they told him he would be seen if he placed another; this never once happened in the entire time" Plaintiff was at the Fresno County Jail. (ECF No. 4, at 19.)

About a week or two before Plaintiff left the Fresno County Jail, he was forced to "masturbate in front of the others by a fat white trans to have sex, she had Hep C, while Weda watched TV, and everyone else was at yard." (Id.) A few days later, "Sanchez did the same." (Id.)

On December 28, 2010, Plaintiff was processed out of the Fresno County Jail. When Plaintiff told staff that he needed an HIV test because he had been raped, the officials told Plaintiff to tell the next place. Then, when Plaintiff told staff and medical staff at Lerdo and then Victorville that he needed an HIV test, he was again told to tell the next place.

On January 10, 2011, Plaintiff arrived at Federal Correctional Institution Lompoc. Plaintiff campaigned to be given an HIV test. Finally, in early to mid-February 2011, Plaintiff was tested and, on or about March 7, 2011, Plaintiff was diagnosed with AIDS.

Plaintiff alleges that Defendants Najera and Interim U.S. Marshal June 15-October 25, 2010 were statutorily required to insure that inmates are held and confined under constitutionally correct conditions, they knew, or should have known, that Fresno County Jail did not meet those standards, they chose to continue to house Plaintiff at the Fresno County Jail, and acted with

deliberate indifference to the substandard medical care and levels of violence at the Fresno County Jail. Plaintiff alleges that all other defendants were also deliberately indifferent to the conditions of Plaintiff's confinement in the Fresno County Jail and Plaintiff's need for appropriate medical care.

Plaintiff states that he previously filed an action in this Court, <u>Miller v. Najera</u>, No. 1:12-cv-01288-LJO, on July 30, 2012. The 2012 action was then dismissed without prejudice by the District Judge on December 21, 2017 with leave to complete the exhaustion of his administrative remedies.

Plaintiff seeks $45 million dollars in compensatory damages, $45 million dollars in punitive damages, and other relief as the Court deems proper.

**III.   Discussion**

    **A.   Claim Preclusion – *Res Judicata***

"Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." <u>Taylor v. Sturgell</u>, 553 U.S. 880. 892 (2008). Put another way, "[c]laim preclusion bars a party in successive litigation from pursuing claims that were raised or could have been raised in a prior action." <u>Media Rights Techs., Inc. v. Microsoft Corp.</u>, 922 F.3d 1014, 1020 (9th Cir. 2019) (quotation marks and internal alterations omitted). Claim preclusion "applies when the earlier suit (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." <u>Mpoyo v. Litton Electro-Optical Sys.</u>, 430 F.3d 985, 987 (9th Cir. 2005) (internal alterations and quotation marks omitted); see also <u>Howard v. City of Coos Bay</u>, 871 F.3d 1032, 1039 ("Claim preclusion requires '(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties.'").

In his complaint, Plaintiff admits that he previously filed an action in this Court, <u>Miller v. Najera</u>, No. 1:12-cv-01288-LJO, on July 30, 2012. Further, Plaintiff states that the 2012 action was dismissed without prejudice on December 21, 2017 with leave to complete his exhaustion of administrative remedies. Therefore, the Court analyzes both the 2012 action and this action in order to determine if any of the claims that Plaintiff raises in this action are barred by claim

7

preclusion.

        1.      Prior Action: 1:12-cv-01288-LJO (E.D. Cal.)

Miller v. Najera, Case No. 1:12-cv-01288-LJO (E.D. Cal.) ("Miller I") was filed on July 30, 2012.[1] In Miller I, Plaintiff named, among other defendants, Albert Najera, Fresno County, Margaret Mims, Rick Hill, and Officer Guiterrez. Miller I, Third Amended Complaint, ECF No. 32. In his third amended complaint, Plaintiff alleged that, while he was housed as a federal pretrial detainee in the Fresno County Jail from June 15, 2010 to December 28, 2010, he was assaulted, raped, and denied prompt and adequate medical care due to the named Defendants' deliberate indifference to known levels of violence and substantial medical care that existed in the Fresno County Jail. Id.

On June 8, 2016, the Court found that Plaintiff had alleged cognizable claims for failure to protect/deliberate indifference against Defendants Albert Najera, Margaret Mims, Rick Hills, County of Fresno, unknown Fresno County Jail Sergeant, and Does 1, 2, 4-6, 8-11, 13, and 14, but that Plaintiff had failed to allege a cognizable medical deliberate indifference claim. Miller I, ECF No. 33, at 6.

On December 21, 2017, the Court issued an order granting Defendant Najera's motion for summary judgment and granting the motion for summary judgment filed by Defendants Mims, Hill, the County of Fresno, an unknown Fresno County Jail Sergeant, and Does 1, 2, 4-6, 8-11, 13, and 14. Miller I, ECF No. 92. With regards to Plaintiff's claims against Defendant Najera, the Court found that Plaintiff's claims against Defendant Najera in his official capacity were barred by sovereign immunity, and that Plaintiff's claims against Defendant Najera in his individual capacity failed because Plaintiff did not make a sufficient showing linking Defendant Najera to the actions of his subordinates and Fresno County Jail staff. (Id.) With regards to Plaintiff's claims against Defendants Mims, Hill, the County of Fresno, an unknown Fresno County Jail Sergeant, and Does 1, 2, 4-6, 8-11, 13, and 14, the Court found that, since the Defendants carried their burden of proving that Plaintiff failed to exhaust his available

---

[1] The Court takes judicial notice of the docket, filings, and orders filed and made in Miller I. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

administrative remedies, Plaintiff's claims against the Defendants were dismissed without prejudice. (Id.) Judgment was entered in accordance with the Court's order on December 21, 2017. Miller I, ECF No. 93.

### 2. Identity of Claims

First, the Court decides whether Miller I "involved the same 'claim' or cause of action" as the current action. Mpoyo, 430 F.3d at 987. The Court employs four criteria to determine whether claims are identical: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transaction nucleus of facts." Harris v. County of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal quotation marks and citation omitted). "The fourth criterion is the most important." Id.

After careful consideration of both actions, the Court determines that the allegations in this action arise out of the same nucleus of facts and allege infringement of the same rights as those alleged in Miller I. In both Miller I and this action, Plaintiff alleges that, while he was housed as a federal pretrial detainee in the Fresno County Jail from June 15, 2010 to December 28, 2010, he was assaulted, raped, and denied prompt and adequate medical care due to the named Defendants' deliberate indifference to known levels of violence and substantial medical care that existed in the Fresno County Jail. Further, in both cases, Plaintiff asserts that the Defendants' actions violated his constitutional rights to due process and cruel and unusual punishment, and Plaintiff seeks the same forms of relief. Therefore, the Court determines that the first criteria of claim preclusion is met because Miller I "involved the same 'claim' or cause of action" as the current action. Mpoyo, 430 F.3d at 987.

### 3. Final Judgment on the Merits

Second, the Court decides whether Miller I reached a final judgment on the merits. Mpoyo, 460 F.3d at 987. As noted above, the Court in Miller I granted Defendant Najera's motion for summary judgment on the grounds that Plaintiff's official capacity claims against Defendant Najera were barred by sovereign immunity and that Plaintiff's individual capacity

9

claims against Defendant Najera failed because sufficient showing linking Defendant Najera to the actions of his subordinates and Fresno County Jail staff. Miller I, ECF No. 92. Since the Court granted Defendant Najera summary judgment on the merits of Plaintiff's claims against the Defendant, the Court finds that Miller I reached a final judgment on the merits of Plaintiff's claims against Defendant Najera. See Mpoyo, 430 F.3d at 988 ("The second res judicata element is satisfied by a summary judgment dismissal which is considered a decision on the merits for res judicata purposes.")

However, the Miller I court dismissed without prejudice Plaintiff's claims against Defendants Mims, Hill, the County of Fresno, an unknown Fresno County Jail Sergeant, and Does 1, 2, 4-6, 8-11, 13, and 14 because Plaintiff had failed to exhaust his available administrative remedies prior to filing suit. Miller I, ECF No. 92. Therefore, the Court in Miller I did not reach a final judgment on the merits of Plaintiff's claims against Defendants Mims, Hill, the County of Fresno, an unknown Fresno County Jail Sergeant, and Does 1, 2, 4-6, 8-11, 13, and 14. Weinberg v. Whatcom County, 241 F.3d 746, 750 (9th Cir. 2001) ("[A] dismissal without prejudice is not a decision on the merits and thus lacks preclusive effect.")

Therefore, the Court determines that the second element for the application of claim preclusion is met only with regard to Plaintiff's claims against Defendant Najera, and any party in privity with Defendant Najera, because Miller I reached a final judgment only on the merits of Plaintiff's claims against Defendant Najera.

4. Privity Between Parties

Third, the Court decides if Miller I "involved identical parties or privies." Mpoyo, 430 F.3d at 987. The Court notes that Plaintiff was also the plaintiff in Miller I and that Defendant Najera was also named as a Defendant in Miller I. Since Plaintiff and Defendant Najera are identical parties, they are quite obviously in privity. Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1081 (9th Cir. 2003). Therefore, the Court determines that the third element for the application of claim preclusion is met.

Consequently, as all three elements of *res judicata* are satisfied, Plaintiff's claims against Defendant Najera in this action are barred by *res judicata*.

**B.     Statute of Limitations**

Following careful review of Plaintiff's first amended complaint, the Court finds that Plaintiff's claims against Defendants Najera, Interim U.S. Marshal June 15-October 25, 2010, U.S. Deputy Marshal Does 1-2, Fresno County, Fresno County Department of Public Health, Moreno, Laird, Narayen, Fresno County Jail Pill-Cart Does 1-6, Fresno County Jail Medical Does 1-2, Fresno County Jail, Mims, Hill, Fresno County Jail Classification Officer(s), Meza, Fresno County Jail "Floor Sergeant" Doe, Guiterrez, and Fresno County Jail Does 1-20 appear to be barred by the applicable statute of limitations.

Initially, the Court begins by determining when Plaintiff's federal claims under 42 U.S.C. §§ 1983 and 1985(3) and Bivens, 403 U.S. 388 and Plaintiff's state law negligence claim accrued.[2]

Federal law determines when a civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1985(3) and Bivens, 403 U.S. 388 accrue. Wallace v. Kato, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."); Western Ctr. for Journalism v. Cederquist, 235 F. 1156 (9th Cir. 2000) ("While the statute of limitations period is derived from state law, federal law determines when the statute of limitations period accrues."). Pursuant to "federal rules conforming in general to common-law tort principles[,]" "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (internal quotation marks, brackets and citations omitted). Put another way, "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999). However, state law determines when a claim brought pursuant to California state law accrues. Under California law, "[g]enerally speaking, a cause of action accrues at 'the time when the cause of action is complete

---

[2] The Court notes that Plaintiff appears to be raising a state law negligence claim based on violations of the Sexual Abuse in Detention Elimination Act, California Penal Code §§ 2635-4643.

Further, Plaintiff also appears to be attempting to raise a claim pursuant to the Prison Rape Elimination Act. However, the Prison Rape Elimination Act does not provide a private cause of action. See Reed v. Racklin, No. 2:17-cv-0799 WBS AC P, 2019 WL 4745266, at *6 (E.D. Cal. Sept. 30, 2019).

11

with all of its elements." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 806 (2005).

In this case, Plaintiff's federal and state claims are predicated on events that occurred while Plaintiff was housed as a federal pretrial detainee at the Fresno County Jail from June 15, 2010 to December 28, 2010. (ECF No. 4, at 14-19.) Further, Plaintiff has alleged that he was diagnosed with AIDS on March 7, 2011. (Id. at 19.) Therefore, Plaintiff's federal and state law claims were complete no later than March 7, 2011 and accrued no later than March 7, 2011.

Next, the Court applies the statute of limitations applicable to each claim in order to determine whether the statute of limitations lapsed before Plaintiff filed this action. With regards to Plaintiff's federal claims pursuant to 42 U.S.C. §§ 1983 and 1985(3) and Bivens, the Court applies California's "statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007) (citation and internal quotation marks omitted); see also Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (stating that courts apply a state's statute of limitations for personal injury actions to claims brought pursuant to 42 U.S.C. § 1983); McDougal v. County of Imperial, 942 F.2d 668, 673-74 (9th Cir. 1991) ("[W]e hold that suits under § 1985(3) are also best characterized as personal injury actions and are governed by the same statute of limitations as actions under § 1983.); Van Strum v. Lawn, 940 F.2d 406, 410 (9th Cir. 1991) (stating that court apply a state's statute of limitations for personal injury actions to claims brought pursuant to Bivens). Therefore, Plaintiff's federal claims pursuant to 42 U.S.C. §§ 1983 and 1985(3) and Bivens are subject to the two-year statute of limitations set forth in California Code of Civil Procedure § 335.1. See Canatella, 486 F.3d at 1132. Further, Plaintiff's state law negligence claim is also subject to the two-year statute of limitations set forth in California Code of Civil Procedure § 335.1. See So v. Shin, 212 Cal. App. 4th 652, 662 (2013) ("The limitations period for a cause of action for ordinary negligence is two years.")

In this case, the Court has already determined that Plaintiff's federal and state law claims accrued no later than March 7, 2011. Plaintiff filed the instant action on August 5, 2019, approximately eight years and five months after Plaintiff's federal and state law claims accrued.

Therefore, Plaintiff's federal and state law claims are time-barred unless Plaintiff is entitled to approximately six and a half years of tolling.

        1.      <u>Statutory Tolling Pursuant to California Code of Civil Procedure § 352.1</u>

California Code of Civil Procedure § 352.1(a) provides that the applicable statute of limitations is statutorily tolled for up to two years when a plaintiff is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life," at the time that the claim accrues. In <u>Elliott v. City of Union City</u>, the Ninth Circuit analyzed California Code of Civil Procedure § 352(a)(3), § 352.1's predecessor statute, and held that "'actual, uninterrupted incarceration is the touchstone' for assessing tolling under § 352(a)(3), which covers all post-arrest custody" because "there is little difference between being incarcerated pre-arraignment, pre-conviction or post-conviction[.]" <u>Elliott</u>, 25 F.3d 800, 803 (9th Cir. 1994). However, the Court notes that, in 2018, the California Second District Court of Appeal held, as a matter of first impression that "a would-be plaintiff is 'imprisoned on a criminal charge' within the meaning of section 352.1 if he or she is serving a term of imprisonment in the state prison." <u>Austin v. Medicis</u>, 21 Cal. App. 4th 577, 597 (2018). The <u>Austin</u> court found that, therefore, statutory tolling pursuant to § 352.1 does not apply to claims that accrue while a would-be plaintiff is a pretrial detainee in a county jail. <u>Id.</u> Nevertheless, since the Ninth Circuit has not addressed the scope of § 352.1(a)'s applicability after the <u>Austin</u> decision was issued in 2018, <u>Elliott</u> remains precedent in the Ninth Circuit. Therefore, while the <u>Austin</u> decision applies to Plaintiff's state law claim, "this Court must apply the principles of the <u>Elliott</u> decision to Plaintiff's [federal claims] unless and until the Ninth Circuit holds otherwise." <u>Baros v. Ramirez</u>, No. 5:17-cv-00948-R (SHK), 2019 WL 3849171, at *9 (C.D. Cal. June 5, 2019); <u>see also</u> <u>Hart v. Massanari</u>, 266 F.3d 1155, 1170-71 (9th Cir. 2001) (stating that "[c]ircuit law … binds all courts within a particular circuit" and that "[b]inding authority must be followed unless and until overruled by a body competent to do so").

In this case, Plaintiff has been actually incarcerated without interruption since he was arrested on June 15, 2010 through the date that this action was filed. (ECF No. 4, at 14-19.) Further, the Court has previously stated that Plaintiff's federal and state law claims accrued no

later than March 7, 2011, at which time Plaintiff was serving a term of 151 months of imprisonment at Federal Correctional Institution Lompoc. See U.S. v. Miller, No. 1:10-cr-00245-LJO (E.D. Cal.). Therefore, it appears that Plaintiff is entitled to two years of statutory tolling pursuant to Code of Civil Procedure § 352.1(a).

Consequently, with two years of statutory tolling due to Plaintiff's imprisonment, the two-year statute of limitations would not have started running until March 7, 2013 and would have expired on March 7, 2015, more than four years before Plaintiff filed this action on August 5, 2019. Accordingly, Plaintiff's federal and state law claims are untimely unless Plaintiff is entitled to more than four years of equitable tolling.

2. Equitable Tolling

"Equitable tolling under California law operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." Jones v. Blanas, 393 F.3d 918, 928 (9th Cir. 2004) (citations and internal quotation marks omitted). Therefore, "California courts apply equitable tolling to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." Id. (citations and internal quotation marks omitted).

**a. California's General Doctrine of Equitable Tolling**

First, the Court considers whether Plaintiff is entitled to equitable tolling pursuant to California's general doctrine of equitable tolling. "The general doctrine of equitable tolling suspends the running of a statute of limitations when a plaintiff, possessing *several legal remedies*, reasonably and in good faith pursues one designed to lessen the extent of his injuries or damages." Addison v. State, 21 Cal.3d 313, 317, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). "Under California law, tolling is appropriate in a later suit when an earlier suit was filed and where the record shows: (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defendant against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Azer v. Connell, 306 F.3d 930, 936 (9th Cir. 2002) (citation and internal quotation marks omitted); see also Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999). A plaintiff is only entitled to equitable tolling if all

three prongs of the test are satisfied. Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1140 (9th Cir. 2001).

As discussed above, prior to filing the instant action, Plaintiff filed Miller I in the U.S. District Court for the Eastern District of California on July 30, 2012 and litigated Miller I until the District Court entered judgment against Plaintiff on December 21, 2017. Nevertheless, the proceedings in Miller I did not toll the statute of limitations applicable to Plaintiff's federal and state law claims because the claims raised in Miller I are nearly identical to the claims raised in this action and Miller I was filed in the same forum as this action. While a statute of limitations in one forum may be equitably tolled while a plaintiff pursues a claim in another forum, the general doctrine of equitable tolling does not apply when a party pursues nearly identical claims in the *same* forum. Schwarz v. Meinberg, 761 F. App'x 732, 735 (9th Cir. 2019) ("We have previously interpreted California law to hold that pendency of a claim in one forum does not toll the statute of limitation for a later claim in the same forum."); Martell v. Antelope Valley Hosp. Med. Ctr., 67 Cal. App. 4th 978, 985 (1998) (appellants pursued successive claims in the same forum, and therefore equitable tolling did not apply).

Therefore, the Court finds that Plaintiff is not entitled to any tolling under the general doctrine of equitable tolling for the length of time that Miller I was pending in the U.S. District Court for the Eastern District of California.

### b. **Bollinger Rule**

Second, the Court considers whether Plaintiff is entitled to equitable tolling pursuant to Bollinger v. Nat'l Fire Ins. Co., 25 Cal. 2d 399 (1944). When a plaintiff pursues the same claim in the same forum, the statute of limitations may be tolled under California law only under a 'general equitable rule' known as the "Bollinger rule." Unlike the general doctrine of equitable tolling, Bollinger applies when a plaintiff refiles the same or virtually identical claims in the same forum and "where technical forfeitures would unjustifiably prevent a trial on the merits." Bollinger, 25 Cal.2d at 410. "[T]hree elements [must] be present before the Bollinger rule of equitable tolling will apply: (1) the plaintiff must have diligently pursued his or her claim; (2) the fact that the plaintiff is left without a judicial forum for resolution of the claim must be

attributable to forces outside the control of the plaintiff; and (3) the defendant must not be prejudiced by application of the doctrine (which is normally not a factor since the defendant will have had notice of the first action)." Hull v. Central Pathology Service Med. Clinic, 28 Cal. App. 4th 1328, 1336 (1994).

Plaintiff cannot satisfy the second element of the Bollinger rule. In this case, the claims raised in Miller I and the claims raised in this action are virtually identical and that both Miller I and this action were filed in the same forum, the U.S. District Court for the Eastern District of California. However, the District Court in Miller I dismissed the claims against Defendant Najera with prejudice because Plaintiff failed to meet his burden on summary judgment, and dismissed the claims against Defendants Mims, Hill, the County of Fresno, an unknown Fresno County Jail Sergeant, and Does 1, 2, 4-6, 8-11, 13, and 14 without prejudice because Plaintiff failed to exhaust his available administrative remedies prior to filing suit. Miller I, ECF No. 92. Therefore, Plaintiff cannot satisfy the second element of the Bollinger rule because "the fact that the plaintiff is left without a judicial forum for resolution of the" claims against Defendants Interim U.S. Marshal June 15-October 25, 2010, U.S. Deputy Marshal Does 1-2, Fresno County, Fresno County Department of Public Health, Moreno, Laird, Narayen, Fresno County Jail Pill-Cart Does 1-6, Fresno County Jail Medical Does 1-2, Fresno County Jail, Mims, Hill, Fresno County Jail Classification Officer(s), Meza, Fresno County Jail "Floor Sergeant" Doe, Guiterrez, and Fresno County Jail Does 1-20 is not "attributable to forces outside the control of the plaintiff[.]" Hull, 28 Cal. App. 4th at 1336. Consequently, the Court finds that Plaintiff is not entitled to any equitable tolling pursuant to the Bollinger rule.

In sum, Plaintiff is not entitled to any equitable tolling. The only tolling that Plaintiff is entitled to is the two years of statutory tolling pursuant to California Code of Civil Procedure § 352.1. However, even with the two years of statutory tolling, the two-year statute of limitations applicable to Plaintiff's federal and state law claims expired on March 7, 2015, four years after Plaintiff's federal and state law claims accrued on March 7, 2011. The statute of limitations was not tolled during the pendency of Miller I or anytime thereafter. Therefore, since Plaintiff did not file this action until August 5, 2019, more than four years later, Plaintiff's federal and state law

claims are time-barred.

### C. Leave to Amend Would be Futile

The only remaining issue is whether to allow Plaintiff leave to amend. "Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when justice so requires. However, the district court may exercise its discretion to deny leave to amend due to undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party …, and futility of amendment." Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 892 (9th Cir. 2010) (citations and internal quotation marks and brackets omitted); see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[I]n dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation and internal quotation marks omitted)).

In this case, the Court has determined that Plaintiff's claims against Defendant Najera are barred by *res judicata* and Plaintiff's remaining federal and state law claims are barred by the applicable statute of limitations. Since Plaintiff cannot plead any additional facts to cure these defects, it would be futile to grant Plaintiff leave to amend his first amended complaint. See Platt Elec. Supply, Inc. v. EOFF Elec., Inc., 522 F.3d 1049, 1060 (9th Cir. 2008) (statute of limitations); Nunes v. Ashcroft, 348 F.3d 815, 818-19 (9th Cir. 2003) (*res judicata*).

### IV. Conclusion and Recommendation

For the reasons discussed herein, Plaintiff's first amended complaint fails to state a cognizable claim for relief. Since the defects in his pleading are not capable of being cured through amendment, granting leave to amend would be futile. Akhtar v. Mesa, 698 F.3d 1202, 1213 (9th Cir. 2012).

Accordingly, it is HEREBY RECOMMENDED that this action be dismissed, with prejudice, for failure to state a cognizable claim upon which relief may be granted.

* * *

These findings and recommendation will be submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 12, 2020**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE